IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOMTAR AI INC.**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 14-0727** |
| **v.** | : | |
| | : | |
| **J.D. IRVING, LTD.**, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    April 25, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion to transfer venue* filed by J.D. Irving, Ltd., Irving Personal Care Limited ("Irving Defendants"), and Chris Ferdock ("Ferdock") (collectively "Defendants") [ECF 3], seeking to transfer this matter to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §1404(a). Plaintiffs, Domtar AI Inc. ("Domtar") and Associated Hygienic Products LLC ("AHP") (collectively "Plaintiffs") have opposed the motion [ECF 14], which is now ripe for consideration.

For the reasons stated herein, Defendants' motion to transfer venue is granted.

### BACKGROUND[1]

Plaintiffs filed this action against Defendant Ferdock seeking injunctive relief in aid of arbitration for breach of contract, unfair competition, misappropriation of trade secrets in

---

[1] The facts set forth herein are taken from Plaintiffs' amended complaint and the declarations and other evidence submitted with each party's respective briefs, including the following: Declaration of Chris Ferdock [ECF 3-5] ("Ferdock Decl."); Second Declaration of Chris Ferdock [ECF 13-3] ("Second Ferdock Decl."); Declaration of Mark Ushpol [ECF 14-1] ("Ushpol Decl."); Supplemental Declaration of Mark Ushpol [ECF 14-2] ("Supp. Ushpol Decl."); and the Declaration of Owen Connelly [ECF 14-3] ("Connelly Decl.").

violation of the Pennsylvania Uniform Trade Secrets Act, breach of fiduciary duty, conspiracy, and conversion arising out of an employment agreement, and against the Irving Defendants seeking injunctive relief and damages for unfair competition, misappropriation of trade secrets, tortious interference with contractual relations, conspiracy and conversion arising from Ferdock's employment.

Plaintiff Domtar is a Delaware corporation. (Am. Comp. ¶5). In June 2013, Domtar acquired AHP, then a Delaware limited liability company with its corporate headquarters in Duluth, Georgia,[2] which is in the business of manufacturing and distributing adult incontinence and baby diaper products throughout North America. (*Id.* at ¶6). Thereafter, AHP became a wholly owned subsidiary and affiliate of Domtar, (*Id.* at ¶3, 4 and 23), sharing the same principal place of business in Raleigh, North Carolina. (*Id.* ¶¶4-5).

Irving Defendants are foreign corporations headquartered in Canada with their respective principal places of business in New Brunswick, Canada. (*Id.* at ¶¶7-8). Irving Defendants manufacture baby diapers and training pants in Canada for major North American retailers. (*Id.* at ¶9).

Defendant Ferdock is an individual residing in Perkiomenville, Pennsylvania. (*Id.* at ¶10). He began his employment with AHP in January 2007, (Ferdock Decl. ¶2), and reached the position of Corporate Vice-President of Marketing. (Am. Comp. ¶11; Ferdock Decl. ¶19). During his employment with AHP, Ferdock maintained an office in Duluth, Georgia, and worked out of the office two out of every four weeks where he reported to executives and interacted with AHP's sales and marketing teams and customers. (Ferdock Decl. ¶9). Ferdock generally spent the remaining two weeks of the month on the road conducting business, although sometimes he

---

[2] Ferdock Decl. ¶2; Agreement.

2

worked out of his home in Pennsylvania. (Ferdock Decl. ¶¶10-11). Defendant Ferdock's business cards indicate Duluth, Georgia, as his work location. (*Id.* at ¶9).[3]

In order to participate in a supplemental deferred compensation plan, on December 22, 2009, Ferdock executed a Key Employee Employment Agreement with AHP (the "Agreement"). (Am. Comp. ¶17; Ferdock Decl. ¶¶13, 17). This Agreement was prepared by AHP's counsel in Georgia and presented to a group of AHP executives and other employees during a meeting held at the Duluth headquarters. (Ferdock Decl. ¶¶13-16). The Agreement contained certain post-employment restrictive covenants. Pertinent to this matter are: a non-competition provision, a non-solicitation provision, and the permissive venue and jurisdiction selection clause; *to wit*: Section 12(d) of the Agreement which provides:

> With respect to disputes arising under this Agreement that are submitted to a court rather than an arbitrator, including actions to compel arbitration or for equitable relief in aid of arbitration, the parties agree that venue and jurisdiction are proper in any state or federal court lying within the county and state in which the Company's branch office is located where the Employee is or was last employed . . . .

(Ferdock Decl., Ex. B). The term "Company" is defined in the Agreement as "Associated Hygienic Products, LLC, [AHP] a Delaware limited liability company whose address is 3400 River Green Court, Suite 600, Duluth, Georgia 30096." (*Id.*).

On January 6, 2014, Ferdock announced his intention to resign his position with AHP and accept a position as Vice-President of Sales and Marketing with Defendant IPC. (Am. Comp.

---

[3] In their opposition to the motion to transfer venue, Plaintiffs rely on the declaration of Mark Ushpol to support their contention that Ferdock worked primarily out of his home in Pennsylvania while employed by AHP. Ferdock disputes these contentions, pointing out that he never reported to Mr. Ushpol. (Second Ferdock Decl. ¶11). In fact, Mr. Ushpol never worked for AHP, but instead worked for Domtar. (Second Ferdock Decl. ¶10). According to Ferdock, and nowhere disputed by Plaintiffs, Ferdock had limited interactions with Mr. Ushpol beginning around the time of Domtar's acquisition of AHP. (Second Ferdock Decl. ¶¶10-14).

¶77). To lure him to remain, Plaintiffs offered Ferdock incentives, but he declined the offers. (*Id.* at ¶78).

Three weeks later, on January 31, 2014, Plaintiffs filed the instant complaint against Defendants J.D. Irving, Ltd. and Ferdock, seeking damages and injunctive relief. [ECF 1]. On March 12, 2014, Plaintiffs filed an amended complaint and added Irving Personal Care, Ltd., as a defendant.[4] [ECF 6]

On February 7, 2014, Defendants filed a petition for declaratory judgment against Plaintiffs in the United States District Court for the Northern District of Georgia, seeking to have the post-employment restrictions underlying Plaintiffs' instant claims declared unenforceable under Georgia law. On March 11, 2014, Defendants filed the motion to transfer this case to the Northern District of Georgia.

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). The purpose of transferring venue under §1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In determining whether transfer is appropriate, "the district court is vested with wide discretion," *Plum Tree, Inc. v. Stockment*, 488 F.2d 754,

---

[4] On that same day, Plaintiffs filed a related complaint against J.D. Irving, Ltd. (defendant in this matter) and James DeFelice, in the United States District Court for the Eastern District of North Carolina, alleging claims nearly identical to those pending in this action against another former employee.

4

756 (3d Cir. 1973), and its decision is governed by federal law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-78 (3d Cir. 1995).

The threshold inquiry under §1404(a) is whether venue in the transferee district is proper. *Id.* at 878. If venue is proper, the court must then undertake a balancing test to decide whether the convenience of the parties and witnesses and the interest of justice would be better served by a transfer to a different forum. *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197 (E.D. Pa. 2008). The party seeking the transfer bears the burden of establishing the need for the transfer. *Jumara*, 55 F.3d at 879.[5] Although "there is no definitive formula or list of the factors to consider," when determining whether a transfer is warranted, a court should weigh existing relevant private and public interests in its decision process; *to wit*:

> The private interests include[]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests include[]: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

---

[5] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, *4 (E.D. Pa. Oct. 2005).

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. "Although the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration." *Id.* (citations omitted). "Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.*

As to the threshold inquiry required under §1404(a), this Court finds that this matter could have been brought in the Northern District of Georgia since venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b)(2). The employment agreement in question was drafted in Georgia by AHP's counsel, presented to Ferdock in AHP's then-headquarters in Duluth, Georgia, and executed in Georgia. When an agreement is at issue, the locale where the contract was formed and performed has a "substantial part of the events or omissions" giving rise to the claim. *Cottman Transmission System, Inc. v. Martino*, 36 F.3d 291, 295-96 (3d Cir. 1994) (finding that venue was proper in the Eastern District of Michigan where the contract at issue was executed and performance made); *Siegel v. Homestore, Inc.*, 255 F. Supp.2d 451, 456 (E.D. Pa. 2003) (finding venue proper in California because plaintiff executed closing documents underlying dispute in California).

Here, the Agreement's restrictive covenants are critical to the issues before the court. Indeed, the viability of Plaintiffs' contract and tort-based claims will depend on the court's interpretation and application of the Agreement, which was drafted in Georgia by AHP's counsel, presented to Ferdock at AHP's then-headquarters in Duluth, Georgia, and executed in Georgia. In addition, in the Agreement, the parties contracted that venue and jurisdiction were

6

proper "in any state or federal court lying within the county and state in which [AHP's] branch office is located where the Employee is or was last employed . . . ." During the majority of his tenure with AHP (between January 2007 and June 2013, when Domtar acquired AHP), Ferdock worked out of AHP's office in Duluth, Georgia.

This factual scenario supports a finding that this action could have been filed in the Northern District of Georgia. Having made this determination, this Court will now consider the *Jumara* private and public factors to determine whether the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer.

## PRIVATE FACTORS

As indicated, the private factors include the plaintiff's forum preference as manifested in the original choice; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

### *Plaintiffs' Choice of Forum*

Although a plaintiff's choice of venue is generally given deference, the plaintiff's choice is not dispositive and receives less weight when none of the operative facts occurred in the selected forum. *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197-98 (E.D. Pa. 2008); *Rowles v. Hammermill Paper Co., Inc.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum."). When "the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other

7

private interests are afforded less weight." *Cancer Genetics, Inc. v. Kreatech Biotechnology B.V.*, 2007 WL 4365328, *5 (D. N.J. Dec. 11, 2007). A plaintiff's forum choice also receives "considerably less weight" where "the plaintiff chooses a forum which is not his home." *Siegel v. Homestore, Inc.*, 255 F.Supp.2d 451, 456 (E.D. Pa. 2003) (citing *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 256 (1981)). In addition, deference to the plaintiff's choice of forum "is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Jumara*, 55 F.3d at 880.

Here, the Eastern District of Pennsylvania is not home to either Plaintiff; rather, Plaintiffs are Delaware corporations with their principal places of business in North Carolina. Prior to June 2013, AHP was headquartered in Duluth, Georgia. As described above, the operative facts relevant to Plaintiffs' claims all occurred in or near Duluth, Georgia. Ferdock was employed at AHP's office in Duluth; he regularly dealt with customers, AHP executives and AHP's marketing team while working out of AHP's offices in Duluth; and the Agreement at issue was executed by the parties in Duluth. Since this forum has little connection with the operative facts of the lawsuit, Plaintiffs' choice of this district is not accorded with the usual strong preference or weight. *Siegel*, 255 F. Supp.2d at 457. In addition, the Agreement, which underlies Plaintiffs' contract-based claims and defines the obligations and rights between Plaintiffs and Ferdock, contains a permissive venue selection clause which consents to venue in the location of the last branch office out of which Ferdrock worked, which was Duluth, Georgia.

8

In light of these observations, the plaintiff's choice of forum factor weighs in favor of the requested transfer. *Cf.*, *Cancer Genetics, Inc.*, 2007 WL 4365328, *5 (finding permissive venue selection clause to weigh in favor of transfer).[6]

## *Defendants' Forum Preference*

In the motion to transfer venue, Defendants identify the Northern District of Georgia as their preferred forum. At the time Ferdock entered into the Agreement, AHP was headquartered in Georgia. As stated, the Agreement was drafted by AHP's counsel in Georgia and presented to Ferdock and other AHP employees in Georgia. In addition, the Agreement includes a permissive forum selection clause, which Ferdock wishes to invoke. In light of the significant relationship between the underlying employment contract dispute and the state of Georgia, Defendants' forum choice of the Northern District of Georgia weighs in favor of transfer.

## *Whether the claim arose elsewhere*

The third factor – where a majority of events giving rise to the claim arose – also weighs in favor of transfer. As set forth, few, if any, of the events underlying Plaintiffs' contract-based claims arose in Pennsylvania. To the contrary, most of the events, including the negotiation, execution, and performance of the Agreement occurred in Georgia, as well as the resignation

---

[6] Plaintiffs argue that this matter should remain in this District on account of the "first-filed rule." Under this rule, a district court may "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). Though Plaintiffs invoke this rule, they have not requested that this Court "enjoin" a subsequent prosecution of proceedings. Rather, Plaintiffs merely rely upon this rule to oppose the transfer of this action to another forum. Plaintiffs have cited no case, however, in which a court held that transfer of venue under §1404(a) was precluded by the "first-filed rule." *But cf. FMC Corp. v. AMVAC Chemical Corp.*, 379 F. Supp.2d 733, 750 (E.D. Pa. 2005) (considering *Jumara* factors for motion to transfer venue under 28 U.S.C. §1404(a) despite party's "first-filed" argument); *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 WL 700496, *9-10 (E.D. Pa. Oct. 29, 1997) (same). Moreover, courts in this Circuit have recognized that "[e]xceptions to the first-filed rule 'are not rare, and are made when justice or expediency requires, as in any issue of choice of forum.'" *National Foam, Inc.*, 1997 WL 700496, *7 (citations omitted).

announcement and the incentive offers to Ferdock. As such, this factor weighs in favor of transfer to Georgia.

### Convenience of the parties and/or witnesses as indicated by their relative physical and financial condition

Plaintiffs are both Delaware corporations with a principal place of business located in North Carolina, although AHP was based in Duluth, Georgia, during the majority of Ferdock's employment. Plaintiffs' business location is based closer to Georgia, than to Pennsylvania. Any travel by representatives from the corporative office and the cost associated with the travel would be significantly less from North Carolina to Georgia, than from North Carolina to Pennsylvania, as would be the cost for lodging. While Ferdock lives in Pennsylvania, he has no objection to the matter proceeding in Georgia, as evidenced by the filing of this motion to transfer.

The convenience of witnesses "is a particularly significant factor in a court's decision whether to transfer." *Idasetima v. Wabash Metal Prods., Inc.*, 2001 WL 1526270, *2 (E.D. Pa. Nov. 29, 2001). Fact witnesses "'who possess[] firsthand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the 'balance of convenience' analysis.'" *Coppola*, 250 F.R.D. at 199 (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192, 203 (D. Del. 1998)). Considering Plaintiffs are both based in North Carolina, and AHP was formally headquartered in Georgia, it appears likely that the majority of fact witnesses in this matter will be located in either Georgia or North Carolina. The only Pennsylvania witness is Ferdock, who seeks transfer to Georgia. Under these circumstances, the convenience of the parties and witnesses weighs in favor of transfer.

### Location of books and records

As to the final private factor, the location of books and records, "[t]echnical advances of recent years have significantly reduced the weight of this factor in the balance of convenience

10

analysis. . . ." *Lomanno v. Black*, 285 F. Supp.2d 637, 647 (E.D. Pa. 2003). Thus, this factor has a neutral effect unless hard copies of documents are necessary to this litigation since they are likely housed in Plaintiffs' current or former headquarters (North Carolina or Georgia) and not in Pennsylvania.

## PUBLIC FACTORS

*Jumara* describes the public interest factors to include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

### *Enforceability of judgment*

Plaintiffs argue that the injunction which Defendants seek in the Georgia action cannot be enforced in Pennsylvania. To support this contention, Plaintiffs rely on *Keener v. Convergys Corp.*, 342 F.3d 1264 (11th Cir. 2003), a case where the Eleventh Circuit Court of Appeals held that the district court had overstepped its authority by entering a permanent, nationwide injunction that precluded an employer from enforcing a non-compete clause that was deemed contrary to Georgia public policy. However, Plaintiffs' reliance on *Keener* is misplaced. First, the contract at issue in *Keener* was governed by Ohio law, and under those circumstances, the *Keener* court held that the Georgia court could only enjoin enforcement in Georgia. *Id.* at 1268, n. 2. The Eleventh Circuit recognized the limitation of its holding in *Keener* two years later in *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1308 (11th Cir. 2005): "[i]n *Keener*, we held that a district court abused its discretion by enjoining the enforcement of an agreement nationwide, when the agreement, invalid under Georgia law and public policy, had

11

selected another state's law." *See also Rowland v. International Paper Co.*, 2011 WL 1457194, *7 (N.D. Ga. Apr. 15, 2011) (distinguishing *Keener* on the basis that the parties intended the law of another state to govern the underlying contract). Here, it is likely that all of the claims relating to the underlying contract will be governed by Georgia law, as intended by the contracting parties. Thus, this case is materially distinguishable from *Keener*.

Second, the *Palmer* court emphasized that its previous decision in *Keener* was limited to the district court's overbroad injunctive relief, and could not be extended to the "geographic scope of the district court's declaratory judgment." *Palmer & Cay, Inc.,* 404 F.3d at 1309. The *Palmer* court, therefore, vacated the district court's limitation of its declaratory judgment to Georgia. *Id.* at 1310. Here, Plaintiffs acknowledge that "Defendants seek a declaratory judgment that the restrictive covenants in Ferdock's Employment Agreement are unenforceable . . . ." (Plaintiffs' Brief at p. 2). Such a judgment is likely enforceable in other jurisdictions. *Id.* at 1310-1311. Thus, this factor is neutral since both courts have the ability to enforce any judgments rendered.

*Practical considerations that could make the trial easy, expeditious or inexpensive*

As set forth above, most of the facts underlying Plaintiffs' contract-based claims occurred in or around Duluth, Georgia. As a result, most of the witnesses (with the exception of Ferdock, who seeks transfer of the matter to Georgia) are likely to be located in or around Duluth, Georgia making the trial in that forum easier, more expeditious and less expensive. Thus, this factor weighs in favor of transfer.

*Relative administrative difficulty in the two fora resulting from court congestion*

Judicial notice can be taken that the Eastern District of Pennsylvania and the Northern District of Georgia have comparable dockets. The pendency of related litigation in another

12

forum, however, is a proper factor to consider in the choice of venue question. *See AT&T Corp. v. Pab, Inc.*, 935 F. Supp. 584, 593 (E.D. Pa. 1996). "[W]here there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted . . . In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, *5 (E.D. Pa. June 26, 2009); *see also Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980) ("The substantial likelihood that this case will be consolidated with the two related cases pending in the United States District Court of Maryland, sitting at Baltimore, weighs heavily in favor of transfer."). Here, there is an action currently pending in the Northern District of Georgia between these same parties raising many of the same issues raised in this matter. Therefore, transfer and consolidation of this matter with that pending in the Northern District of Georgia will preserve judicial resources.[7]

*Local interest in deciding controversies at home and the public policies of the fora*

While Pennsylvania certainly has an interest in protecting its citizens from the effect of potentially unreasonable and unenforceable non-compete clauses, the operative facts underlying the dispute at the heart of this matter occurred in Georgia, including the negotiation and execution of the underlying Agreement. Thus, Georgia also has a significant interest in the parties' underlying disputes. In addition, as the parties suggest in their briefs, Georgia courts have interpreted Georgia law and policy as unfavorable to non-compete clauses in employment contracts governed by Georgia law. Thus, this factor weighs in favor of transfer.

---

[7] Notably, neither party has indicated whether a transfer of venue to this district has been sought in the related action pending in the Northern District of Georgia.

13

*Familiarity of the trial judge with the applicable state law in diversity cases*

Because the operative facts underlying the parties' contract-based dispute occurred in Georgia, including the drafting and execution of the Agreement, it is likely that Georgia law will govern the majority, if not all, of the parties' underlying disputes. *See e.g.*, *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1444 (11th Cir. 1991) (under Georgia choice-of-law analysis, Georgia law applies to contract executed in Georgia); *Aircraft Guaranty Corp. v. Strato-Lift, Inc.*, 951 F.Supp. 73, 77 (E.D. Pa. 1997) (Pennsylvania's choice-of-law analysis in contract actions requires consideration of place of negotiation, contracting and performance of contract, location of subject matter and the parties' citizenship). While district courts are frequently called upon to interpret and apply the law of a state other than that in which they sit, when considering a motion to transfer venue, a "diversity case should be decided by the court most familiar with the applicable state law." *Coppola*, 250 F.R.D. at 201-02. This factor, therefore, weighs in favor of transfer.

After weighing all of the *Jumara* private and public factors, this Court finds that for the convenience of the parties and witnesses and in the interest of justice, a transfer to the Northern District of Georgia is warranted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for transfer of venue is granted. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.J.